## NEW ENGLAND ELECTRIC CO.

v.

## Patricia FREEMAN.

### No. 80–315–Appeal.

Supreme Court of Rhode Island.

Dec. 8, 1982.

Rudolph E. Boffi, Law Offices of Hugh L. Moore, Jr., Providence, for plaintiff-appellee.

O'Neill & Reilly, John B. Reilly, Providence, for defendant-appellant.

## OPINION

KELLEHER, Justice.

This is an employee's appeal from a decree of the appellate commission of the Workers' Compensation Commission, affirming a trial commissioner's finding that the employee was no longer incapacitated because of an injury she sustained on September 8, 1977. On that day she had been working as a meter reader when she tripped and fell, suffering an injury that was later described as a "lumbosacral strain."

On August 1, 1978, the parties entered into a preliminary agreement that called for the payment of compensation benefits beginning as of September 9, 1977, and continuing through the duration of her total incapacity. Later, on April 30, 1979, the employer filed a petition to review the agreement, alleging that the employee's incapacity for work had ended and that she was able to return to light selected work.

When the petition came on for hearing during the summer and fall of 1979, the trial commissioner was faced with conflicting medical testimony. The physician chosen by the employer testified that the employee had made a full recovery. Thereafter, the employee's physician appeared before the trial commissioner and painted a different picture when he described how his patient had to "walk up and down driveways and stairs, in cellars and looking around cellars for [the] location of [the] meter and taking the reading under some difficult situations * * *." This physician was of the opinion that the employee was unable to perform her normal duties.

Faced with this conflict, the commissioner, acting pursuant to G.L.1956 (1979 Reenactment) § 28–35–24, appointed Dr. Edward Spindell, an orthopedist, as an impartial examiner. Doctor Spindell's report, which was received by the commission, indicated that the employee could return to work. On January 22, 1980, Dr. Spindell appeared before the trial commissioner for cross-examination by the employee's attorney. After giving some details of his examination and his interview with the employee, Dr. Spindell was asked the following question: "And, doctor, have you performed other independent examinations or examine[d] on behalf of Travelers Insurance Company?" An objection to the question was lodged, and the objection was sustained. When the employee's attorney at-

tempted to direct the trial commissioner's attention to § 28–35–24, he was told that he should cross-examine the doctor on the report and that any past examinations on behalf of the employer's insurance carrier were totally immaterial.

The appellate commission, in denying the employee's appeal, noted that its review was limited to the record made before the trial commissioner and ruled that there was nothing in the record which would indicate that the impartial examiner did not qualify as an impartial examiner. It appears that both the appellate commission and the trial commissioner have misconceived the thrust of the employee's argument.

An impartial physician is defined by § 28–35–24 as a "competent physician designated by the workers' compensation commission who is not under contract with or regularly employed by a compensation insurer or self-insured employer." The employee's attorney was attempting to show that the impartial expert did not qualify for the appointment because he had been "regularly employed" by the employer's carrier, Travelers' Insurance Company. Once Dr. Spindell made a finding of no incapacity, he was a proper subject for cross-examination.

The basic purpose of cross-examination is to impeach the credibility of the witness. *Atlantic Refining Co. v. Director of Public Works of Rhode Island,* 102 R.I. 696, 713, 233 A.2d 423, 432 (1967). One traditional method of impeachment is to show that the witness has a bias or prejudice toward one of the parties or has a personal interest in the outcome of the case, which bias or interest can be expected to color his testimony or undermine its reliability.

In *Woodward v. Wilbur,* 54 R.I. 60, 169 A. 486 (1933), this court considered whether it was proper examination of an adverse medical expert to ask, " 'You do a great deal of work for insurance companies, do you not?' " *Id.* at 63, 169 A. at 488. The court observed: "The bias or prejudice of a witness is a proper subject of enquiry. Expert witnesses sometimes unconsciously acquire a bias from their frequent appearance as a witness for plaintiffs or defendants." *Id.* at 63–64, 169 A. at 488.

The employee's only opportunity to inquire about the physician's partiality came when her attorney attempted to inquire into the physician's past relationship with the employer's compensation carrier. Here, the employee's right of cross-examination was unreasonably curtailed. At the rehearing, the employee shall be afforded the opportunity to inquire about whether Dr. Spindell is under contract or regularly employed by Travelers' Insurance Company.

The phrase "regularly employed," in our opinion, is not to be equated with constant employment, but rather it is to be determined by considering the frequency and the regularity with which Travelers' called upon the expertise of Dr. Spindell.

The employee's appeal is sustained, the decree appealed from is vacated, and the case is remanded to the Workers' Compensation Commission for further proceedings.